

**FILED & ENTERED**

**FEB 19 2014**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Williams DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>B-Squared Inc.<br><br><br>Debtor(s).<br><br>B-Squared Inc.<br><br>Plaintiff(s),<br>v.<br><br>Great American Assurance Company, Gevork Tashchyan, Aida Tashchyan, Andranik Tashchyan<br><br><br>Defendant(s). | CHAPTER 11<br><br>Case No.:  1:09-bk-12590-GM<br>Adv. No:   1:09-ap-01192-GM<br><br>**MEMORANDUM OF OPINION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Docket #199)**<br><br>Date:  January 14, 2014<br>Time:  10:00 a.m.<br>Courtroom:  303<br>21041 Burbank Blvd.<br>Woodland Hills, CA 91367 |

<u>Undisputed Facts</u>

At the relevant times, debtor/plaintiff B-Squared, Inc. ("BSI" or "Debtor") was a licensed mortgage broker and its business primarily consisted of arranging and

-1-

administering mortgage loans funded by individual investors.  Upon arranging a loan, BSI would enter into a Loan Servicing Agreement with the lender(s), pursuant to which BSI would administer the loans on behalf of these lenders in exchange for various fees.

On December 13, 2002, Debtor arranged two separate loans (the "Loans"), each for $765,000 to Gevork Tashchyan, Aida Tashchyan and Andranik Tashchyan (collectively, "the Tashchyans") for the construction of two single family homes at 322 and 326 Bell Canyon Blvd. ("322 Bell" and "326 Bell"; collectively, the "Real Properties").  *See* Declaration of William Schumer, originally filed in this action on March 27, 2012, which is Exhibit 3 to BSI's Request for Judicial Notice filed in support of this Motion ("RJN"; Docket 201[1]), at ¶¶ 6, 15.[2]   Both loans were evidenced by notes and secured by deeds of trust on the respective Real Properties (the "Deeds of Trust").  *Id.* at ¶¶ 7, 16.  (The Deeds of Trust are Exhibits 1 and 2 to the RJN.)  As of March 27, 2012, the outstanding amounts owed on the 322 Note exceeded $691,473.69 and the outstanding amounts on the 322 Note exceeded $696,401.97 and costs and expenses of recovery exceeded $338,000. Schumer Dec. ¶ 52.

The Deeds of Trust each included provisions assigning to the "Lender" (which is defined by an addendum listing various individual lenders):

> (i) "all rights to payment of money . . . which arise from or relate to construction on the Land or to any business now or later to be conducted on it, or to the Land and Improvements generally"  Deeds of Trust ¶¶ 1.1(i);
>
> (ii) "all proceeds . . . of the voluntary or involuntary conversion" of the Real Properties "including proceeds of all present and future fire, hazard or casualty insurance policies . . . . and all causes of action and their proceeds for

---

[1] Unless otherwise noted, all docket #s refer to this adversary proceeding (09-ap-01192).
[2] The Schumer declaration was originally filed on 3/27/12 as doc. #109.  It is referred to herein as "Schumer Dec."

-2-

any damage or injury to the [Real Property] . . . ."  Deeds of Trust ¶¶ 1.1(j);

(iii) "all proceeds of any insurance policies payable because of damage or loss sustained to all or part of [the Real Property], whether required pursuant to the [loan agreement] or otherwise maintained by [the Tashchyans]; and all interest that may accrue on the foregoing."  Deeds of Trust ¶¶ 5.5(a)(iii)&(iv).

On February 24, 2003 BSI, d/b/a All California Lending, as agent for the Lender, entered into two construction loan agreements for the respective Real Properties (the "Construction Loan Agreements"), which further secured the Loans.  Both Construction Loan Agreements provided that "the proceeds of insurance paid on account of any damage or destruction to the [construction project] shall be paid to the Lender to be applied as provided in Section 3.2."  (Section 3.2 provides in relevant part that proceeds for losses over 10% of the loan value may be applied to payment of the Loan or restoration of the Real Property, at the Lender's discretion.)  Construction Loan Agreements, attached to Schumer Dec. as Exhibits A & C, at §§ 3.1(1), 3.2(3).

The Tashchyans obtained homebuilders insurance policies for the construction of each of the two homes (the "Policies") from Great American Assurance Company ("GAAC").  The Policies both included a Mortgage Holders' endorsement that (i) identified "All Star Funding" as the mortgage holder for 322 Bell and "All California Funding" as the mortgage holder for 326 Bell, (ii) provided that GAAC "will pay for covered loss or damage to buildings or structures to the named mortgage holder" and (iii) stated that "the mortgage holder had the right to receive loss payment."  Policies attached to Schumer Dec., as Exhibits B & D.  (The parties agreed that the "All Star Funding" designation was a mistake and All California Funding is the designated mortgage holder for this endorsement.)

In November 2004 and January 2005, both Real Properties suffered water damage and the Tashchyans submitted a notice of loss to GAAC. Schumer Dec. ¶ 23.

There were initial payments of some amount up to about $290,000 with no dispute that $177,341.36 was made up of checks jointly payable to the Tashchyans, their attorney, and BSI. Schumer Dec. ¶¶ 28-29. The matter then moved to the Los Angeles Superior Court. The Court takes judicial notice of the following concerning the state court action:

(1) On August 28, 2006 GAAC filed Los Angeles Superior Court case BC357638 as an interpleader case in which GAAC interpled $722,658.64 in insurance proceeds to deal with claims of the Tashchyans, Blessing, and BSI. The language of the prayer for relief states that "defendants and each of them, be ordered to interplead and litigate their respective rights to the above-described $722,658.64 insurance proceeds." Docket #113-1, p. 56; LASC Docket.[3]

(2) On November 15, 2006 the Tashchyans filed a cross-complaint against GAAC, Blessing, and BSI. In that cross-complaint they asserted causes of action against GAAC based on breach of contract and breach of the implied covenant of good faith and fair dealing. Docket #113-3, p. 29; 18th cause of action, p. 59; LASC Docket.

(3) The interpleader was dismissed on January 28, 2009 on the motion of GAAC. Docket #113-3, p. 68.

(4) On May 12, 2009 the Tashchyans dismissed BSI from its cross-complaint. However, the cross-complaint by the Tashchyans against GAAC went forward

---

[3] Shumer Dec. with exhibits (Docket #113) was refiled as Exhibit 3 to the RJN (Docket #201).

-4-

and a settlement was reached on June 10, 2009. Docket #137, p. 12; LASC Docket.

(5) A confidential settlement agreement between Gevork and Aida Tashchyan and GACC was executed on June 17, 2009 and provided that GAAC would pay $700,000 to the Tashchyans, who would dismiss their cross-complaint against GAAC.  Confidential Settlement Agreement and Release in Full dated 6/16-19/09, attached to Schumer Dec. as Exhibit H (the "Settlement Agreement").  The Settlement Agreement also specified that there had been a total prior payments of $289,553.95, which constituted "a full and final satisfaction of any and all obligations Great American owes, may owe or that Plaintiffs may, in the future, claim are owed for the Claims and under the 322 Policy and 326 Policy." *Id.* at ¶ 3 of "Agreements" section; "Acknowledgements and Representations" addendum.  (The payment of $700,000 was to be made by check payable to "'Gevork Tashchyan and Aida Tashchyan, and the Trust Account of Terenik Koujakian, Inc." Docket 212, p. 14, 17.)

GAAC paid Gevork Tashchyan the amount of $700,000 in compliance with the Confidential Settlement Agreement.  *See* Supplemental Declaration of Eric Levinrad filed December 23, 2013 (Docket # 212) and exhibits thereto.

Gevork Tashchyan did not pay any portion of these settlement proceeds to BSI or the lenders.  Schumer Dec. ¶ 50.

Gevork Tashchyan and related persons paid a total of $461,660.22 in legal fees concerning the case against GAAC and dealings with Robert Blessing (who was involved in the sale or development or investment in the Real Properties), although,

there is no accounting for the balance of the settlement proceeds. See Statement of Expenses for Bell Canyon Properties, filed January 23, 2014 (Docket #218). (Although not authenticated or under penalty of perjury, the Court has reviewed these documents and Gevork Tashchyan's handwritten comments to them.)

Procedural Status

On June 18, 2009 BSI filed this adversary action against GAAC and the Tashchyans. On August 2, 2010, BSI filed the current operative second amended complaint ("SAC"), in which BSI has asserted a right to recover the proceeds of the Policies (i) under the Notes, Deeds of Trust and Construction Loan Agreement and (ii) as the named mortgage holder in the Policies. This right forms the basis for, among other things, BSI's second claim for turnover of property of BSI's estate against GAAC and the Tashchyans and its fifth claim for breach of contract against the Tashchyans. See SAC (Docket #46).

There was an earlier motion for summary judgment by GAAC, which was denied by this Court. See Order entered July 12, 2012 (Docket #151); Tentative Ruling entered June 26, 2012 (Docket #150).

On October 4, 2013, the Court ordered that Gevork Tashchyan's answer be stricken (as a sanction for failing to appear for his court-ordered deposition) and a default entered against him. The Court also ordered that BSI could apply for the entry of a default judgment against Gevork Tashchyan and submit evidence in support of such judgment. See Order entered October 4, 2013 (Docket #197) at 2:14-17.

On December 18, 2013 the Court entered its order (i) vacating the default of Gevork Tashchyan, (ii) converting BSI's motion for default judgment into a motion for

summary judgment and (iii) continuing the hearing on the motion to January 14, 2014 so that the Court could determine how to proceed with this matter.

At the January 14, 2014 hearing on BSI's motion, the Court took summary judgment against Gevork Tashchyan under submission, but allowed Mr. Tashchyan time to submit any additional documents as to the receipt and use of the money.  He did so on January 23, 2014.  Docket #218.

There was also a January 14, 2014 pre-trial conference for this adversary proceeding.  BSI and GAAC agreed that all discovery has been completed and the Court directed them to reach agreement on the remaining issues to be tried.  The status conference was continued to March 11, 2014.  At that time this matter will be reviewed for readiness to transfer to the District Court for trial.  (The parties had previously agreed that this proceeding would be tried in the District Court and BSI has stipulated to GAAC's demand for a jury trial. See Order entered April 18, 2013 (Docket #162); Stipulation entered April 16, 2013 (Docket #161).)

This motion for summary judgment is only as to Gevork Tashchyan although it is clear that Aida Tashchyan also received the proceeds of the settlement.  Neither she nor Andranik Tashchyan has been dismissed from this adversary proceeding.

## Analysis

### Findings of Fact

BSI has established that it is owed the proceeds of the Policies arising from damage to the Real Properties, either as agent for Lender or directly as a loss payee. (However because this motion does not deal with the liability of GAAC, the Court makes no final findings as to whether GAAC is liable under the policies for more than the

$177,341.36 that it is undisputed was previously jointly made payable to the Tashchyans, their attorney, and BSI.  The Court also makes no final findings as to whether GAAC paid an additional amount of about $111,000 and, if it was paid, what happened to the money.)

BSI has established that the Tashchyans entered into the Settlement Agreement to receive $700,000 from GAAC and that GAAC paid that amount jointly to the Tashchyans and their attorney.

(GAAC has objected to the use of the confidential Settlement Agreement between GAAC and the Tashchyans.  The Court finds that the use of the Settlement Agreement for the purposes of this motion is not barred by Fed. R. Evid. 408 because it is not being used to show the validity or amount of any claims against GAAC.  Rule 408 expressly allows the introduction of settlements for other purposes and this Settlement Agreement is introduced only for the purpose of showing that Gevork received or had the benefit of $700,000 paid by GAAC.  In fact, the Settlement Agreement contains no admissions of liability by GAAC and is more likely to support GAAC and the Tashchyans in their contention that the money was paid in settlement of tort claims rather than the payment of policy proceeds.  Even without the terms and details of the Settlement Agreement, it is no longer a disputed fact that Gevork Tashchyan received and/or had the benefit of $700,000 from GAAC.

BSI has established that the Tashchyans have not paid any part of the $700,000 to or for the benefit of BSI.

Gevork Tashchyan has established that he paid at least $461,660.22 to his lawyers for legal representation against Blessing and/or GAAC.  (Mr. Tashchyan seems to believe that he is relieved from liability because he used some or all of the money to

pay his attorneys, but this is not the case.)

### Remaining Triable Issue of Fact

The only issue remaining as to Gevork Tashchyan is whether the $700,000 settlement amount was to pay the proceeds due under the policy or whether it was to settle the Tashchyan's bad faith claim against GAAC and resolve all future litigation. If the former, that $700,000 belonged to BSI and Mr. Tashchyan is liable to BSI for that money; if the latter, BSI has no claim to the money.

The Tashchyans' lawsuit against GAAC that was settled by the Settlement Agreement had one cause of action for both breach of the insurance contract and breach of the implied covenant of good faith and fair dealing. On the other hand, the Settlement Agreement indicates that the prior payments by GAAC that it asserts totaled $289,553.95 satisfied all obligations under the insurance policies. (GAAC has argued that only these initial payments were a policy benefit and the $700,000 was to settle the lawsuit to which BSI was not a party.) Thus, the allocation of this $700,000 remains a triable issue of fact.

### Conclusions of Law

If the $700,000 is found to be proceeds of the Policies and thus be property of BSI, (i) section 542(a) of the Bankruptcy Code requires that the money be turned over to BSI and (ii) Gevork Tashchyan has breached provisions of both the Deeds of Trust and the Construction Loan Agreements that provide for payment of the money to BSI as agent for the Lender.

### Conclusion

Because BSI is not seeking recovery of the initial payments from Gevork Tashchyan, summary judgment is denied BSI as to Gevork Tashchyan on those payments and that part of the claim against him is dismissed. However, this is not a finding on the merits.

There is a triable issue of fact as to the claim for the $700,000 paid by GAAC under the Settlement Agreement. If this was made in payment of the claim under the Policies, Mr. Tashchyan is liable to BSI for that amount. However, if it was paid in settlement of the tort of breach of good faith and fair dealing, Mr. Tashchyan has no liability to BSI for that amount.

Summary adjudication is granted to BSI against Gevork Tashchyan as to all other elements of its Second Claim (for turnover of property of the estate) and its Fifth Claim (for breach of contract.)

###

Date: February 19, 2014

Geraldine Mund
United States Bankruptcy Judge